UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-61652-CIV-SINGHAL

ACCELERANT SPECIALTY INSURANCE
COMPANY,

    Plaintiff/Counter-Defendant,

v.

JASON BALLARD,

    Defendant/Counter-Plaintiff.
_____/

## ORDER

**THIS CAUSE** is before the Court on Plaintiff's Motion for Summary Judgment. (DE [84]). The motion is fully briefed and ripe for review. For the reasons discussed below, the motion is granted.

    I.    INTRODUCTION

Plaintiff, Accelerant Specialty Insurance Company ("Accelerant"), seeks a declaratory judgment that it is not obligated to provide coverage under a Private and Pleasure Yacht Insuring Agreement[1] (the "Policy") (DE [12-1]) issued by it to Defendant Jason Ballard ("Ballard"). Ballard, in turn, has filed a Counterclaim against Accelerant for breach of contract and seeks payment under the Policy. (DE [46]).

The dispute arose after the insured vessel suffered a sudden and accidental loss when it grounded on a submerged rock in the Hillsboro Inlet near Pompano Beach, Florida. Ballard made a claim for coverage under the Policy and, after investigation, Accelerant filed this declaratory judgment action. Accelerant contends no coverage is owed because under New York law, Ballard's breach of the Policy's fire suppression and

---

[1] At the time of loss, Accelerant had issued a Temporary Binder but for ease of reference it is referred to as the Policy.

survey compliance warranties render the Policy void. Accelerant also claims that Ballard's misrepresentation that all the survey recommendations had been completed violated the federal admiralty doctrine of *uberrimae fidei*, and the Policy is, therefore, void from its inception. (DE [1] ¶¶ 42-50).

Ballard contends that Florida, not New York, law should apply. He also argues that he did not breach the Policy's conditions and warranties because the loss to the vessel was not caused by fire and the firefighting equipment was in working order. He states that he was never provided a copy of the survey and cannot, therefore be charged with failure to comply with the survey. He also argues that the alleged misrepresentations were not material to the risk. Finally, Ballard argues that Accelerant waived the right to rescind the Policy because it never refunded the premium to him.

II. LEGAL STANDARDS

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment "is appropriate only if 'the movant shows that there is no genuine [dispute] as to any material fact and the movant is entitled to judgment as a matter of law.'" *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014) *(per curiam)* (quoting Fed. R. Civ. P. 56(a));[2] *see also Alabama v. North Carolina*, 560 U.S. 330, 344 (2010). The moving party bears the "responsibility of informing the … court of the basis for its motion and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

The court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *SEC v. Monterosso*, 756

---

[2] The 2010 Amendment to Rule 56(a) substituted the phrase "genuine dispute" for the former "'genuine issue' of any material fact."

F.3d 1326, 1333 (11th Cir. 2014). On cross motions for summary judgment, "the facts are viewed in the light most favorable to the non-moving party on each motion." *Chavez v. Mercantil Commercebank, N.A.* 701 F.3d 896, 899 (11th Cir. 2012). The court must consider each motion on its own merits. *SEC v. Keener,* 580 F. Supp. 3d 1272, 1281 (S.D. Fla. 2022).

To prevail on a motion for summary judgment, "the nonmoving party must offer more than a mere scintilla of evidence for its position; indeed, the nonmoving party must make a showing sufficient to permit the jury to reasonably find on its behalf." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015). "[T]his, however, does not mean that we are constrained to accept all the nonmovant's factual characterizations and legal arguments." *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 459 (11th Cir. 1994).

### III.   DISCUSSION

Ballard owns a 1986 40' Viking yacht. (DE [84] ¶ 1). The Policy (DE [12-1]) insured the vessel's hull for $72,000, subject to a $10,800 deductible. (DE [84] ¶ 2).

The Policy contains General Conditions and Warranties, including the following:

> xi. If the Scheduled Vessel is fitted with fire extinguishing equipment, then it is warranted that:
> a. All fire extinguishing equipment is properly installed and is maintained in good working order.
> b. All fire extinguishing equipment is tagged and certified annually or in accordance with the manufacturer's recommendations, whichever is more frequent.
> c. The tanks of such equipment are weighed annually or in accordance with the manufacturer's recommendations, whichever is more frequent.
> d. The tanks are recharged as necessary.
>
> For purposes of complying with this warranty, all installation, maintenance, certification, tagging, weighing, and recharging must be conducted by a duly licensed and qualified individual whose principal business is the installation, maintenance, certification, tagging, weighing, and recharging of such systems. Such individual may not be

>the insured, a Covered Person or any named operator, unless expressly approved by Us in writing. (DE [12-1] p. 14).
>
>xiii. This contract is null and void in the event of a non-disclosure or misrepresentation of a fact or circumstances material to Our acceptance or continuance of this insurance. No action or inaction by Us shall be deemed a waiver of this provision. *Id.*
>
>xviii. Unless We agree in writing to the contrary, if We request a survey of the Scheduled Vessel then it is warranted that such survey is in existence prior to the effective date of this insurance and a copy of the same must be received by us within 30 days of the effective date of this Insuring Agreement. If the survey makes any recommendations with respect to the Scheduled Vessel, then it is warranted that all such recommendations are completed prior to any loss giving rise to any claim hereunder[.] *Id.* p. 15.
>
>If You have used a broker to effect coverage, it is hereby agreed that Your Brokers or any substituted brokers (whether surplus line approved or otherwise), shall be deemed to be exclusively agents of You and not of Us in any and all matters relating to, connected with or affecting this insurance. Any notice given or mailed by us or on behalf of Us to the said brokers in connection with or affecting this insurance, or its cancellation, shall be deemed to have been delivered to You. *Id.* p. 13.

The Policy also provides that, in the absence of entrenched federal maritime law, disputes under the Policy will be adjudicated under New York law:

>11. Choice of Suit, Choice of Law and Forum
>
>It is hereby agreed that any dispute or claim arising hereunder (including non–contractual disputes or claims), or in connection with this Insuring Agreement, shall be adjudicated according to well established, entrenched principles and precedents of substantive United States Federal Admiralty law and practice but where no such well-established, entrenched precedent exists, any dispute or claim arising hereunder (including non–contractual disputes or claims), or in connection with this Insuring Agreement, is subject to the substantive laws of the State of New York. *Id.* p. 18.

At all relevant times, the Vessel had a fire suppression system and at least four portables. (DE [84] ¶ 17). As of the date of the loss, the vessel's fixed fire suppression

4

system had not been weighed, certified, or tagged since May 2021, more than one year prior to the loss. *Id.* ¶¶ 18-21.

Accelerant has produced evidence that it received a survey of the vessel dated May 27, 2021, with the original application for insurance, from Ballard's broker. *Id.* ¶¶ 22-23. The survey was accompanied by a Letter of Survey Recommendations Compliance ("LOC") DocuSigned by Ballard which stated that "all recommendations pertaining to the above vessel contained with the detailed survey submitted herein have been complied with." *Id.* ¶ 24. The DocuSign was sent to Ballard at an email address to which only he had access. *Id.* ¶ 25. The LOC warned that "[a]ny misrepresentation in this letter of compliance may render insurance coverage null and void from inception." *Id.* ¶ 26. According to Accelerant's underwriter, Accelerant would not have agreed to provide insurance if the survey had not been supplied. *Id.* ¶ 41-42.

The survey noted 10 A-level "Safety Deficiencies," 18 B-level "Other Deficiencies Requiring Attention," and 21 C-level "Surveyor's Notes and Observations." *Id.* ¶ 27. These recommendations included replacing all fuel hoses on the vessel, seizing the anchor rod shackles with galvanized or noel seizing wire to help prevent loss of anchor, and reconditioning gel coating on the forward deck as needed. None of these recommendations had been completed by the time Accelerant conducted its post-loss inspection of the Vessel. *Id.* ¶¶ 27-34.  When Ballard signed the renewal questionnaire in 2022, he did not disclose that he had not corrected the deficiencies noted on the survey, nor did he disclose that the fire suppression system had not been recertified since May 2021. *Id.* ¶ 40.

Accelerant's underwriter stated that any prudent and intelligent insurer would request a survey on a 35-year-old boat and would expect that any safety-related

deficiencies identified in the survey would be corrected before agreeing to insure the vessel. *Id.* ¶¶ 41-42. The underwriter testified that if Accelerant had known that the survey deficiencies were not corrected, it still may have agreed to issue the Policy, but only subject to a warranty that the vessel would remain in port until the recommendations had been complied with. *Id.* ¶ 43.

Ballard does not contest the language of the Policy, but he claims he never received a copy of the Policy prior to the loss or the filing of his claim. (DE [106] ¶¶ 3-11, 23-28, 30, 32, 34, 39). Ballard's response to Accelerant's statements about the Vessel's condition, the fire suppression system, the survey compliance, and the loss history do not address the factual matters, but rather, disputes that these issues are material or related to the loss. He further states that materiality precludes summary judgment. *Id.* ¶¶ 18-21, 29, 31, 33, 36-37, 40-50). But Ballard has not submitted any admissible evidence to dispute the facts as stated by Accelerant.[3]

### A. Accelerant's Motion for Summary Judgment

Accelerant argues the Policy is void under New York law due to breach of several Policy warranties and under the federal maritime doctrine of *uberrimae fidei.* Ballard disputes each of these claims. He also argues that Accelerant has waived the right to revoke the policy by not refunding his premium.

#### 1. Choice of law

The first issue to be addressed is which law applies. The Policy contains a choice of law clause providing that, in the absence of entrenched federal maritime law, disputes under the Policy will be adjudicated under New York law. (DE [84] ¶ 10; DE [12-1], p. 18).

---

[3] Ballard attempted to introduce facts in the form of denials offered by an expert witness. *See* (DE [82-1]). The Court struck most of the witness' testimony as improper expert testimony under Fed. R. Evid. 702. *See* (DE [114]).

> It is hereby agreed that any dispute or claim arising hereunder (including non–contractual disputes or claims), or in connection with this Insuring Agreement, shall be adjudicated according to well established, entrenched principles and precedents of substantive United States Federal Admiralty law and practice but where no such well-established, entrenched precedent exists, any dispute or claim arising hereunder (including non–contractual disputes or claims), or in connection with this Insuring Agreement, is subject to the substantive laws of the State of New York.

"[T]here is no firmly established federal maritime precedent governing express fire-suppression or survey-compliance warranties." *Clear Spring Prop. and Cas. Co. v. Viking Power LLC,* 608 F. Supp. 3d 1220, 1226 (S.D. Fla. 2022) (Altonaga, C.J.) (citing *Wilburn Boat Co. v. Fireman's Fund Ins. Co.,* 348 U.S. 310, 314-15 (1955). The scope and validity of marine insurance warranties are to be determined by reference to state law. *Id.*

Ballard argues that Florida law should apply and bases most of his arguments on Florida law; he argues that Accelerant has no good faith basis for arguing why New York law should apply. This is incorrect. "Longstanding precedent establishes a federal maritime rule: Choice-of-law provisions in maritime contracts are presumptively enforceable." *Great Lakes Ins. SE v. Raiders Retreat Realty Co.,* 601 U.S. 65, 70 (2024). There are only three instances where a court should disregard a maritime choice-of-law provision: "(1) 'when the chosen law would contravene a controlling federal statute'; (2) when the choice-of-law clause would 'conflict with an established federal maritime policy'; or (3) 'when parties can furnish no reasonable basis for the chosen jurisdiction.'" *Clear Spring Prop. & Cas. Co. v. Wello & Mom, LLC,* 2025 WL 626028, at *11 (S.D. Fla. Feb. 26, 2025) (Altman, J.) (quoting *Raiders Retreat,* 601 U.S. at 76).

Ballard does not argue that New York law would contravene a controlling federal statute or conflict with established federal maritime policy. He argues that application of New York law would be unreasonable and unjust, that New York has no connection with

the parties or this action, and that Florida has a strong public policy of protecting insureds. These arguments do not persuade.

First, the Supreme Court has stated that "the 'no reasonable basis' exception must be applied with substantial deference to the contracting parties, recognizing that maritime actors may sometimes choose the law of a specific jurisdiction because it is well developed, well known, and well regarded." *Raiders Retreat,* 601 U.S. at 77. Ballard does not argue that New York law is inadequate. Indeed, "courts in this District routinely enforce choice of law provisions selecting federal maritime or New York law as the law governing marine insurance policies." *Liermo v. Nat'l Cas. Co.,* 733 F. Supp. 3d 1359, 1365 (S.D. Fla. 2024) (citing cases).

Second, the Supreme Court rejected the proposition that state-level public policy concerns could invalidate choice-of-law provisions in maritime contracts.

> A federal presumption of enforceability would not be much of a presumption if it could be routinely swept aside based on 50 States' public policy determinations. The ensuing disuniformity and uncertainty caused by such an approach would undermine the fundamental purpose of choice-of-law clauses in maritime contracts: uniform and stable rules for maritime actors.

*Raiders Retreat,* 601 U.S. at 77; *see also Wello and Mom, LLC,* 2025 WL 626028, at *11 (noting that in *Raiders Retreat,* "the Supreme Court *declined* to recognize an additional exception based on state public policy") (emphasis in original)). As a consumer, Ballard had complete freedom to purchase a policy without a choice of law clause, or one that did not specify New York law. But this Policy by its terms directs that the parties shall first look to "well established, entrenched principles and precedents of substantive United States Federal Admiralty law and practice" and if no such law exists, to the law of New York. (DE [12-1]). New York law applies to this dispute and the Court will not address Ballard's arguments that are based on Florida law.

2. Breach of Warranties

Accelerant argues the Policy is void because Ballard breached two Policy warranties: the Fire suppression warranty and the Survey compliance warranty. As discussed above, New York law applies to these claims. Under New York law, a "breach of an express warranty in a marine insurance policy voids the policy, even where the breach played no role in the loss." *Wello and Mom,* 2025 WL 626028, *13 (quotations omitted) (citing *Jarvis Towing & Transp. Corp. v. Aetna Ins. Co.,* 82 N.E.2d 577, 577 (N.Y. 1948) (holding that noncompliance with an express warranty "forbids recovery, regardless of whether the omission had a causal relation to the loss").

a. The fire extinguisher warranty

Ballard argues the breach of the fire extinguisher warranty cannot void the Policy because (1) the fire extinguishers were in working condition and (2) the loss was not caused by fire. Neither argument prevails.

The fire extinguisher warranty states as follows:

> **9.   General Conditions & Warranties**
>
> xi. If the Scheduled Vessel is fitted with fire extinguishing equipment, then it is warranted that:
>
> > a. All fire extinguishing equipment is properly installed and is maintained in good working order.
> > b. All fire extinguishing equipment is tagged and certified annually or in accordance with the manufacturer's recommendations, whichever is more frequent.
> > c. The tanks of such equipment are weighed annually or in accordance with the manufacturer's recommendations, whichever is more frequent.
> > d. The tanks are recharged as necessary.
>
> For purposes of complying with this warranty, all installation, maintenance, certification, tagging, weighing, and recharging must be conducted by a duly licensed and qualified individual whose principal business is the installation, maintenance, certification, tagging, weighing, and recharging of such

9

systems. Such individual may not be the insured, a Covered Person or any named operator, unless expressly approved by us in writing. (DE [1] ¶ 16).

As discussed above, under New York law a breach of a marine insurance policy's warranty will forbid recovery regardless of whether there is causation between the breach and the injury. *Great Lakes Ins. SE v. Chartered Yachts Miami LLC,* 676 F. Supp. 3d 1251, 1264 (S.D. Fla. 2023) (Williams, J.) (citing J*arvis Towing & Transp. Corp*., 82 N.E.2d 577); *Sirius Ins. Co. (UK) v. Collins*, 1993 WL 645926, at *2 (E.D.N.Y. June 29, 1993)). "[T]he governing law of New York requires strict and literal compliance with *all* the Policy's warranties." *Wello and Mom, LLC,* 2025 WL 626028, at *15 (emphasis in original). The fact that the fire suppression system was working and complied with Coast Guard regulations (DE [106-1] ¶ 10) does not satisfy the Policy's requirement that the system be tagged, certified, and weighed at least annually by a qualified individual.

Accelerant has introduced evidence that, as of the date of loss, the Vessel's fixed fire suppression system had not been weighed, certified, or tagged since May 2021, more than one year prior to the loss. (DE [84] ¶¶ 16-21). This evidence is unrefuted. An insured's belief that fire extinguishing equipment is functional and properly maintained does not comply with the Policy's warranties. *Id.* at 14-15 (citing *Viking Power,* 608 F. Supp. 3d at 1227 ("Defendants' argument [that the fire-extinguishing system was properly maintained] is beside the point…All that matters is whether the fire-suppression warranty was breached"). Likewise, in this case, the evidence submitted by Accelerant establishes that the fire suppression warranty was breached.

Ballard argues the fire suppression warranty language is ambiguous, and it cannot, therefore be used to deny coverage. Ballard does not, however, identify the purported ambiguity nor can the Court discern an ambiguity.  "A contract is ambiguous if it is reasonably susceptible to more than one interpretation." *Viking Power,* 608 F. Supp. 3d

at 1227 (citing *Universal Am. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.,* 25 N.Y.3d 675, 680, 37 N.E.3d 78, 16 N.Y.S.3d 21 (2015)). The fire suppression warranty clearly states that the fire suppression equipment must be weighed, certified, and tagged at least annually. Other courts in this District and elsewhere have found no ambiguity in similar clauses. *Viking Power,* 608 F. Supp. 3d at 1227; *Lloyd's of London v. Pagan-Sanchez*, 539 F.3d 19 (1st Cir. 2008) (fire-suppression warranty not ambiguous); *Clear Spring Prop. & Cas. Co. v. Big Toys LLC,* 683 F. Supp. 3d 1297, 1308–09 (S.D. Fla. 2023) ("The only reasonable interpretation of the fire suppression warranty is that it required the tanks be weighed 'once a year'").

Ballard argues that he never received a copy of the Policy and suggests, therefore, that he cannot be bound by its warranties. This is not consistent with the law. "[U]nder both New York and Florida law, a party is presumed to know and understand the terms of the contract it entered into." *Big Toys LLC,* 683 F. Supp. 3d at 1306 (citing *God's Battalion of Prayer Pentecostal Church, Inc. v. Miele Assocs., LLP*, 6 N.Y.3d 371, 812 N.Y.S.2d 435, 845 N.E.2d 1265, 1267 (N.Y. 2006) (a party "may not pick and choose which provisions suit its purposes, disclaiming part of a contract while alleging breach of the rest")); *Webster v. Royal Caribbean Cruise, Ltd.*, 124 F. Supp. 2d 1317, 1324 (S.D. Fla. 2000) (a party "cannot be permitted to pick and choose the provisions of the [agreement] he wishes to enforce and those he wishes to ignore when bringing a lawsuit for damages under the [agreement].")).

The undisputed evidence establishes that the fire suppression system was not weighed, certified, and tagged as required by the Policy. (DE [84] ¶¶ 17-22). Under both the terms of the Policy and New York law, the Policy is null and void. *See* Policy (DE [12-1] p. 14); *Viking Power,* 608 F. Supp. 3d at 1228; *Big Toys,* 683 F. Supp. 3d at 1306-08.

11

b. Survey recommendations

Accelerant has provided evidence that Ballard signed a Letter of Survey Recommendations Compliance ("LOC") (DE [84-8]) in which he certified that "all recommendations pertaining to the above vessel contained with the detailed survey submitted herein have been complied with." (DE [96] ¶ 22; DE [84-8]; DE [84-9]). The LOC notes that "Any misrepresentation in this letter of compliance may render insurance coverage null and void from inception." *Id.* Accelerant has also introduced uncontroverted evidence that the survey's safety recommendations were not corrected. (DE [96] ¶¶ 27-32).

Ballard has produced no proof to show that the survey recommendations were completed. Instead, he argues that he never received a copy of the survey. Again, he is presumed to understand the contents of the contract he seeks to enforce. *Big Toys, LLC,* 683 F. Supp. 3d at 1306. Further, Ballard sent a LOC to Accelerant cerfiying that the survey recommendations had been completed. (DE [84] ¶¶ 24-25). The Docusign for the LOC was sent to Ballard's private email address. *Id.* Ballard does not deny signing the LOC.

The LOC signed by Ballard explained the consequences of a misrepresentation. New York law upholds provisions voiding a policy for breach of warranty. There is nothing ambiguous about the warranty. As explained by Chief Judge Altonaga:

> Under the Policy, Defendant's violation of the warranty comes with great consequence. The Policy provided that it must be treated as void from its inception if Defendant breached a warranty. As the Court has twice explained (and Defendant has admitted in its pleadings), New York law permits marine insurers to deny coverage for breaches of promissory warranties regardless of whether the breach is causally connected to a later loss. (See May 20, 2022, Order 6; Mar. 11, 2022, Order 9; Countercl. 13); see also N.Y. Ins. Law § 3106(c) (McKinney 2022); *Jarvis Towing & Transp.*

> *Corp. v. Aetna Ins. Co.*, 82 N.E.2d 577, 577–78 (N.Y. 1948); *Cunningham v. Ins. Co. of N. Am.*, 521 F. Supp. 2d 166, 170 (E.D.N.Y. 2006).

*Viking Power LLC,* 2022 WL 17987116, at *4. "New York law has long provided that the breach of an express warranty [in a marine insurance policy], whether material to the risk or not, whether a loss happens through the breach or not, absolutely determines the policy and the assured forfeits his rights under it." *Chartered Yachts Miami LLC*, 676 F. Supp. 3d at 1264 (quoting *Great Lakes Reinsurance (UK), PLC v. Rosin*, 757 F. Supp. 2d 1244, 1257 (S.D. Fla. 2010) (alteration in original)). Even construing the facts in the light most favorable to Ballard, the Court concludes that the undisputed evidence of the breach of the survey compliance warranty compels summary judgment in favor of Accelerant.

### 3. *Uberrimae Fidei*

Finally, Ballard argues that Accelerant's *uberrimae fidei* argument is "unsupported" and cannot be a bar to summary judgment in his favor. The Court disagrees.

"*Uberrimae fidei* requires that an insured fully and voluntarily disclose to the insurer all facts material to a calculation of the insurance risk." *HIH Marine Services, Inc. v. Fraser,* 211 F.3d 1359, 1362 (11th Cir. 2000). "Under *uberrimae fidei,* a material misrepresentation on an application for marine insurance is grounds for voiding the policy." *Id.* at 1363. "Duty under *uberriemae fidei* is broad. It extends to material facts not directly inquired into by the insurer and applies even if the misrepresentation was the result of "mistake, inadvertence, or forgetfulness." *HIH Marine Services, Inc.,* 211 F.3d at 1363 (quoting *Steelmet, Inc. v. Caribe Towing Corp.,* 747 F.2d 689, 695 (11th Cir. 1984)). It includes failure to disclose facts which are "within or ought to be within" the knowledge of the insured, including those which are omitted due to negligence or voluntary

13

ignorance. *Steelmet, Inc.,* 747 F.2d at 695 (quoting *Gulfstream Cargo, Ltd. v. Reliance Ins. Co.,* 409 F.2d 974, 980 (5th Cir. 1969) (internal citations omitted)).

Accelerant's Complaint alleges Ballard breached the duty of *uberriemae fidei* by representing that all the survey recommendations had been complied with as of November 2021. (DE [1] ¶¶ 45-50). Ballard argues that he "wholly and completely rejects and controverts the contention that his application for insurance or their letter of compliance contained a misrepresentation or nondisclosure." (DE [107] p. 20). He states that he was never in possession of the survey prior to the issuance of the policy. *Id.* He does not, however, deny that he signed the letter of compliance which stated that "all recommendations pertaining to the above vessel contained with the detailed survey submitted herein have been complied with." (DE [96] ¶ 22). And, as discussed above, Accelerant has introduced evidence that the survey's safety recommendations were not corrected. (DE [84] ¶¶ 26-34). Assuming Ballard attested that all survey recommendations were made without knowing what those recommendations were, the Court cannot reasonably conclude Ballard's disclosure was made in good faith." [A] party who signs a document without any valid excuse for having failed to read it is conclusively bound by its terms, unless there is a showing of fraud, duress, or some other wrongful act on the part of any party to the contract." *Prompt Mortg. Providers of N. Am., LLC v. Zarour,* 64 N.Y.S.3d 106, 108 (N.Y. App. Div. 2017). Having signed and submitted the LOC, Ballard cannot now disavow Accelerant's reliance on it.

Further, Accelerant has provided uncontroverted testimony that resolution of the safety-related survey deficiencies is material. (DE [84] ¶¶ 41-43). Ballard has not produced any admissible evidence to support his argument that the survey compliance

was not material. There are no genuine disputes of fact that would preclude summary judgment from being entered on Accelerant's *uberriemae fidei* claim.

### 4. Waiver

Ballard argues that Accelerant waived its right to rescind the Policy because it did not return the premium to him. The undisputed evidence, however, establishes that no waiver occurred. First, Accelerant has provided proof that it offered to return the premium to Ballard if he dropped his claim. (DE [96] ¶ 49). Second, Accelerant seeks declaratory judgment and, therefore, it is not required to return the premium unless and until the Court declares that there is no coverage available under the Policy. As stated by Judge Bloom of this District:

> Big Toys is correct that an insurer can forfeit its right of rescission by taking actions inconsistent with rescission. One such inconsistent action is when an insurer accepts and collects premiums despite knowing that the policy has been forfeited. Here, however, Clear Spring did not know of Big Toys' breach of the Fire suppression warranty until it conducted its post-accident investigation. In light of the parties' disagreement as to whether the Policy is void, Clear Spring acted appropriately in filing this lawsuit for declaratory judgment prior to returning the premiums. Thus, the Court rejects Big Toys' argument that Clear Spring forfeited its right of rescission by failing to return Big Toys' premiums prior to filing suit.

*Big Toys LLC,* 683 F. Supp. 3d at 1308–09 (citations omitted) (declaring policy void due to breach of fire suppression warranty and ordering return of premium). The Court agrees with Judge Bloom's analysis and concludes that Ballard has failed to establish a waiver.

### B. Conclusion

For the reasons discussed above, the undisputed facts in the record establish that Accelerant is entitled to summary judgment on its claims for breach of warranty and *uberrimae fidei* as well as on Ballard's counterclaim for breach of contract. Accordingly, it is hereby

**ORDERED AND ADJUDGED** that Plaintiff's Motion for Summary Judgment (DE [84]) is **GRANTED.** Pursuant to Fed. R. Civ. P. 58(a), a separate final judgment will be entered. The Clerk of Court is directed to **CLOSE** this case and **DENY AS MOOT** any pending motions.

**DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida, this 17th day of April 2025.

Copies furnished counsel via CM/ECF

RAAG SINGHAL
UNITED STATES DISTRICT JUDGE